### 3810. COOPER *v.* BROWN, Governor.

1. When the principal in a criminal recognizance, conditioned for his appearance to answer a specific criminal charge therein designated, is thereafter arrested for an entirely distinct offense, and, being found guilty of the latter offense, is delivered into the custody of the State, to serve a term upon the public works in accordance with the sentence of a court of competent jurisdiction of this State, the sureties on the bond are released. The release of the sureties from future liability arises from their inability to produce their principal to answer the charge, caused by the act of the State in assuming a custody of their principal to which they were theretofore entitled.

2. The case is not affected by the fact that the principal in the appearance bond escaped from the chain-gang after he had entered upon the service of his sentence. When the State took him into custody to serve the sentence of the court, the obligation of the sureties was annulled, and no act of the principal or of the sureties could revive it.

DECIDED MARCH 6, 1912.

Forfeiture of recognizance; from city court of Houston county—Judge Brunson. October 20, 1911.

*R. N. Holtzclaw,* for plaintiff in error.

*R. E. Brown, solicitor,* contra.

RUSSELL, J.   The single question presented by this record is whether a judgment absolute upon a criminal recognizance can properly be entered against the plaintiff in error, who signed it as security.   As appears from the record and from the agreed statement of facts, Cooper signed an appearance bond as surety of Peter Searcy, conditioned for the appearance of the said Searcy to answer an indictment for a misdemeanor.   The indictment and the bond were transferred to the city court of Houston county, and thereafter, the principal failing to appear, a rule nisi was granted and scire facias issued thereon on May 18, 1911.   On June 13, 1911, Searcy, the principal, was arrested by the sheriff of Dooly county, and was confined in the common jail of Dooly county until June 15, when he pleaded guilty to a misdemeanor in the city court of Vienna, and was sentenced to pay a fine of $75 and costs, or, in default thereof, to serve twelve months on the chain-gang of Dooly county.   On June 15, 1911, Searcy was delivered to the warden in charge of the chain-gang of Dooly county, and was in the chain-gang until July 5, 1911, when he escaped, and he has not been retaken.   The warrant under which Searcy was arrested on June 13, 1911, was for a misdemeanor—cheating and swindling—committed in Dooly county, Georgia.   The sheriff of Dooly county had knowledge that Searcy was wanted in Houston county, to answer to the indictment for misdemeanor, before he was arrested under the warrant for cheating and swindling in Dooly county.   Upon this statement of facts the judge of the city court of Houston county entered a judgment absolute against Cooper, as surety, upon the recognizance; and error is assigned upon the rendition of this judgment.

The ruling in *West* v. *Colquitt,* 71 *Ga.* 559, is cited by counsel for both parties in this case.   In that case it was held, that "Where one has been arrested and given bond to answer for a criminal offense, the sureties on such recognizance are not discharged by the subsequent arrest of their principal on another charge, and the giving of a bond, with other sureties, to answer therefor.   If the State should keep him in continued custody, so as to render his production easy for it, but impossible for the sureties, they would be relieved, but the mere temporary restraint prior to the giving of the

second bond would not work a discharge." Really the precise question then presented to the Supreme Court, as stated by Chief Justice Jackson, was whether, after sureties had obligated themselves to produce the defendant to answer for an offense, they were discharged by a second arrest, for a different offense, and the giving of bail thereon. As to this the court held that the facts would not entitle the sureties on the first bond to be discharged. In reasoning on the fundamental provisions of the constitution of the United States and the constitution of this State, by which the right to give bail was granted to every citizen, the learned Chief Justice discusses the question at some length, and says, that "When the bail agree to produce their principal at court, they do so in full view of the fact that the principal may commit another offense, and may give bail for that, under another arrest; and that, because they have agreed to produce his body to answer for the first offense, the State does not bargain with them not to arrest him if he sins again, and then, that her highest law guarantees to him the right to give other bail to answer that. The State does an act perfectly lawful, when she so arrests him for a second offense." This really concludes the ruling upon the point actually before the court. What immediately follows is an opinion as to the law under a supposable case not then before the court, and therefore, in strictness, is mere obiter. However, the reasoning seems to us so unanswerable that, in the light of what is said by the Supreme Court in *Buffington* v. *Smith,* 58 *Ga.* 341, and *Hartley* v. *Colquitt,* 72 *Ga.* 352, we shall adopt the view of the learned Chief Justice upon the point which is now squarely presented to us. Treating of such a state of facts as those now before us, Chief Justice Jackson says: "If she [the State] should keep him [the principal] in her own custody, of course the bail in the first case would be discharged; because she could produce him, but they could not; and it would be against all reason to punish the sureties for what she did, and by so doing prevent them from keeping their bargain with her, and when all reason for the bail ceased, because she had the man in her own jail or her own penitentiary."

As ruled by the Supreme Court in *Smith* v. *Kitchens,* 51 *Ga.* 159, Cooper, the security in the recognizance now before us can not be charged with the escape of Searcy from the chain-gang of Dooly county. While the defendant is out on bond, he is, in contemplation of law, in the custody of his bail. *Hartley* v. *Colquitt,* 72 *Ga.*

352. When the bail signed the bail bond the law placed the principal in his custody. He could have arrested him and delivered him to the sheriff at any time. *Clark* v. *Gordon*, 82 *Ga.* 613 (12 S. E. 648) As Searcy, the principal, did not appear in conformity with his obligation, the rule nisi and scire facias thereupon properly issued, and if no action on the part of the State had intervened, and the principal failed to appear at the next term of the court, a judgment absolute would have followed necessarily. In *Dennard* v. *State*, 2 *Ga.* 137, as well as in *Roberts* v. *Gordon*, 86 *Ga.* 386 (12 S. E. 649), the court was dealing in each instance with a bond which required the defendant to answer the same charge for which he was sentenced; and in that respect these cases differ from the case at bar, in which the bond which is sought to be finally forfeited has no connection with the offense for which the principal in the bond was sentenced; but in our opinion the principle which controlled the rulings in the *Dennard* and *Roberts* cases, supra, must be applied in the instant case; for the reason that Searcy, Cooper's principal, was taken as completely from his control and custody, and placed as completely within the power of the State of Georgia, when the sheriff of Dooly county, and later the warden of the chain-gang, became his custodian, as if he had been placed in the custody of the sheriff of Houston county by Cooper's surrendering him, or by an order from the court, requiring him to be rearrested. In *Roberts* v. *Gordon*, supra, Chief Justice Bleckley says: "There can be no doubt that as soon as the sentence was pronounced, the sheriff, and not the bail, was the proper custodian of the convict The legal effect of the sentence was equivalent to a special order directing the sheriff to hold him in custody. This being so, it was not necessary to enter an exoneretur on the minutes of the court in order to discharge the bail. The sentence itself operated as an exoneretur. *The Governor* v. *Kemp*, 12 *Ga.* 466." In *Smith* v. *Kitchens*, supra, where it was held that the lower court was right in discharging the securities in a case in which the principal on a prior appearance bond taken by a justice of the peace was arrested under a bench warrant, and remained in the custody of the sheriff until he escaped during the trial, Judge McCay, after saying it would be a very bad public policy to treat the bond given by the defendant before a magistrate as inhibiting the judge of the superior court, even after or before indictment, from order-

ing the rearrest of the defendant, uses the following language: "Here, after indictment found, the judge issues a bench warrant over his own signature and seal, ordering an arrest. That arrest was made, the party was in the custody of the sheriff, and escaped. It would, as it seems to us, be an outrage to charge the original securities with this escape. He was in the lawful custody of the sheriff. The securities could not control him."

The facts in the present case are not identical with those in *West* v. *Colquitt,* supra, but they are very similar to those in *Buffington* v. *Smith,* 58 *Ga.* 342, with the single exception that in *Buffington's* case Earle, his principal, had not escaped. In that case Judge Jackson said: "We think that the court erred. The State had Earle in her own custody—in the penitentiary—just as securely confined as if she held him in jail in Hart county. She had, and now has, nothing to do but to bring him out and try him whenever she pleases to do so If found guilty, she can sentence him for another term, to begin when this White county sentence expires. It would be strange indeed if she forfeited a bond for his not appearing, when she had him in the jail in Hart county; and the penitentiary is her great jail, convenient to Hart as to all the rest of the State." After Searcy's sentence he was in the custody of the State, in a chain-gang under the control of the State. As said by Judge Jackson, the State could have brought him out any day and tried him for the Houston county case. The act of the State in resuming custody of the principal, though perfectly lawful, (to use the language of Chief Justice Jackson) put it out of the power of Cooper to maintain custody of Searcy, or to arrest him for the purpose of delivering him to the sheriff of Houston county in order to relieve his bail. When the State took the custody of Searcy as a convict, she assumed the risk of Searcy's escape. Nothing in the record places upon Cooper any responsibility for the escape, and as to that point the case is similar to the case of *Smith* v. *Kitchens,* supra. But, regardless of the escape, and even if Cooper had been implicated in it, while in that event he would have been subject to indictment, the obligation of the bond ceased and became functus officio when Searcy, Cooper's principal, entered upon his service in the chain-gang. Cooper's liability, except as to the costs of the forfeiture, ceased. No act of the principal or of the surety thereafter could revive the bond The case would have been different if, as

in the *West* and *Hartley* cases, Searcy had given bond and paid his fine in the Dooly county case.

The judge erred in making the judgment upon the bond absolute.

*Judgment reversed.*